IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| ALEX D. MOGLIA, in his capacity as Court-appointed Receiver,<br><br>Plaintiff,<br><br>v.<br><br>ALLISON R. BEESLEY, an individual,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER DENYING MOTION TO DISMISS**<br><br>Case No. 2:25-cv-00384-JNP-JCB<br><br>Chief District Judge Jill N. Parrish |

On November 18, 2025, Defendant Allison R. Beesley filed a motion to dismiss the complaint filed by Plaintiff Alex D. Moglia, in his capacity as Court-appointed Receiver. ECF No. 21. For the reasons discussed below, the court denies the motion to dismiss.

## BACKGROUND[1]

Until his death in October 2024, Mark Israelsen sought and ultimately obtained millions in financing and investments from East West Bank and others for a group of businesses that he owned and controlled, the QIR Entities. ECF No. 1 ¶ 1, 19. Mr. Israelsen obtained these funds through a complex scheme of fraud and misrepresentation. *Id.* ¶¶ 22–38. For example, he represented to lenders that the QIR Entities were thriving, supporting his representations with due-diligence and audit reports that appeared to be prepared by reputable accounting firms like Deloitte but that were actually fabricated. *Id.* ¶¶ 24–26, 40–41. Mr. Israelsen also created numerous bogus shell

---

[1] The court recites the facts as alleged in the complaint. ECF No. 1.

companies to and from which the QIR Entities gratuitously transferred money to give the false impression that they were conducting actual business and receiving revenue. *Id.* ¶ 30.

Israelsen transferred large sums of the QIR Entities' funds for his own personal use. *Id.* ¶ 4. The Receiver asserts in this action that many of these personal transfers were transfers made to Defendant Beesley, who was a romantic partner of Israelsen. *Id.* ¶¶ 42–44.

The Receiver asserts that despite lacking a substantial income, Beesley purchased a home in October 2020, which was prior to Israelsen and the QIR Entities incurring debts to East West Bank and others. *Id.* ¶¶ 16, 46. For the purposes of this order and based on its address, this home will be referred to as the 10782 Home. The Receiver alleges, upon information and belief, that Beesley purchased the 10782 Home with funds that originated from the Receivership Defendants and that some of the 10782 Home's mortgage payments and fees were made by Israelsen. *Id.* ¶ 46. In addition, the Receiver alleges that Israelsen transferred various sums of money to Beesley either directly or through the entities, also before Israelsen and the QIR Entities incurred debts to East West Bank and others. *Id.* ¶¶ 50–51, 60. These transfers will be referred to as the "Pre-Loan Transfers."

The Receiver also asserts that despite lacking a substantial income, Beesley purchased another home in 2024, after Israelsen and his entities incurred debts to East West Bank and others. *Id.* ¶¶ 16, 48. For the purposes of this order and based on its address, this home will be referred to as the 8155 Home. The Receiver alleges that the 8155 Home was purchased with funds that originated with the Receivership Defendants. *Id.* ¶ 48. The Receiver also alleges that Israelsen transferred various sums of money to Beesley either directly or through the entities, also after Israelsen and the QIR Entities incurred debts to East West Bank and others. *Id.* ¶¶ 51–61. These transfers will be referred to as the "Post-Loan Transfers."

The Receiver argues that during this time period, Israelsen and his QIR Entities were insolvent or had assets that were unreasonably small in relation to the transactions they were involved in. *Id.* ¶ 62. Consequently, he asserts voidable transfer and unjust enrichment claims against Beesley. *Id.* ¶¶ 63–74. Beesley, appearing pro se, filed a motion to dismiss. ECF No. 21.

**LEGAL STANDARD**

Beesley argues that the Receiver's complaint against her should be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides that a court may dismiss a complaint if it fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). When considering a motion to dismiss for failure to state a claim, a court "accept[s] as true all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to the plaintiff." *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013).

**ANALYSIS**

In her motion to dismiss, Beesley presents two arguments. First, she argues that she received the challenged transfers in good faith, that she provided reasonably equivalent value through ordinary living expenditures, and that she retained no unjust enrichment of any kind. Second, she argues that East West Bank ("EWB") and the Receiver have pursued parallel and duplicative actions that, when paired with some allegedly coercive communications, demonstrate improper motive and abuse of process. The court addresses each in turn.

Beesley's first argument invokes Utah's Uniform Voidable Transactions Act ("UVTA"). She argues that the UVTA protects transferees who accept transfers in good faith and provide

reasonably equivalent value, citing "Utah Code § 25-6-309(1)." ECF No. 21 ¶ 6. She asserts she satisfies those requirements as a matter of law. She claims that "[c]ourts consistently hold that ordinary living expenses, support, housing, and necessities constitute 'reasonably equivalent value,'" citing to *In re Indep. Clearing House Co.*, 77 B.R. 843 (D. Utah 1987). Because she used the funds on such expenses, and because the two houses she has are used as her home and her sole source of income through renting, she argues that she meets the statutory requirements of the good faith exception and that restitution would be unjust.

The Receiver argues in response that Beesley's argument may create some factual disputes but falls far short of demonstrating that his claims fail as a matter of law. The court agrees.

First, Beesley's argument that she provided reasonably equivalent value as a matter of law does not comport with the law or the case she cites. While she may have spent the funds on necessities, it in no way follows that she necessarily provided the transferor with reasonably equivalent value. "'[I]n determining whether reasonably equivalent value was given, the focus is on whether the *debtor received* reasonably equivalent value from the transfer. In other words, the question is not whether [the transferee] 'gave reasonably equivalent value; it is whether [the transferor] received reasonably equivalent value.'" *Klein v. Roe*, 76 F.4th 1020, 1031 (10th Cir. 2023). Taking the facts as alleged in the complaint as true, Israelsen and the QIR entities did not receive reasonably equivalent value from Beesley.

Second, the Utah Code she cites to (§ 25-6-309(1)) does not exist. Beesley may have meant to cite to § 25-6-304(1), which states that "[e]xcept as otherwise provided in this section, a transfer or obligation is not voidable under Subsection 25-6-202(1)(a) against a person that took in good faith and for a reasonably equivalent value given the debtor or against any subsequent transferee or obligee." Utah Code Ann. § 25-6-304(1). In any case, the good faith defense is an affirmative

defense that she has the burden of proving by a preponderance of the evidence. *AAAG-California, LLC v. Kisana*, 553 F. Supp. 3d 1042, 1051 (D. Utah 2021) (concluding that the party invoking this defense bears the burden of proving it applies). Only "on occasion" is it "proper to dismiss a claim on the pleadings based on an affirmative defense"; namely, "when the complaint itself admits all the elements of the affirmative defense by alleging the factual basis for those elements." *Fernandez v. Clean House*, LLC, 883 F.3d 1296, 1299 (10th Cir. 2018). Here, the complaint does not admit the elements for the good faith defense under the statute.

Third, and most importantly, taking the allegations as stated in the complaint as true, the Receiver has sufficiently pleaded his claims. All the claims at issue here are based on Utah law. The court first addresses the Voidable Transfer Claims, which are brought under Sections 25-6-202 and 25-6-203 of Utah's Uniform Voidable Transactions Act. Utah Code Ann. §§ 25-6-202(1), 25-6-203(1). The court then discusses the unjust enrichment claim.

Section 25-6-202(1) makes certain transfers voidable as to a creditor whether the creditor's claim arose before or after the transfer was made. Pursuant to subsection (1)(a), a transfer is voidable if the debtor made the transfer with the "actual intent to hinder, delay, or defraud any creditor of the debtor." Utah Code Ann. § 25-6-202(1)(a). Section 25-6-202(2) outlines factors that may be considered in determining actual intent, including whether "(a) the transfer or obligation was to an insider; . . . (h) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; (i) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred; [and] (j) the transfer occurred shortly before or shortly after a substantial debt was incurred . . . ." Utah Code Ann. § 25-6-202(2).

The Receiver has plausibly alleged this claim, alleging that the transfers were made with

the actual intent to hinder, delay, or defraud a creditor. To support that claim, the Receiver alleges that Beesley, as Israelsen's romantic partner, was an insider,[2] ECF No. 1 ¶ 65, that the QIR Entities did not receive reasonably equivalent consideration, *id.* ¶ 69, that Israelsen and the QIR Entities were insolvent, *id.* ¶ 66, and that the transfers occurred shortly before and after Israelsen incurred substantial debts,[3] *id.* ¶¶ 32, 42–62.

The Receiver has also plausibly alleged a claim under § 25-6-203. Pursuant to § 25-6-203, a transfer is voidable as to claims arising before the transfer if "(a) the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation; and (b) the debtor was insolvent at the time or became insolvent as a result of the transfer or obligation."[4] Utah Code Ann. § 25-6-203.

Subsection 203 only applies to transfers that take place after a claim arises—in this case, the Post-Loan Transfers. The Receiver alleges that despite apparent insolvency, Israelsen used the

---

[2] Admittedly, it is not clear that Beesley would qualify as an insider as defined by § 25-6-102(8), by being a "relative" of the debtor. Courts have not yet spoken clearly to the boundaries of the term "relative" with respect to these statutes, but it would be unsurprising if a romantic partner fell outside the boundaries of the term. Nevertheless, courts have applied the label of insider to even those who do not fit exactly into the statutory examples provided in § 25-6-102(8). *See, e.g.*, *AAAG-California, LLC v. Kisana*, 553 F. Supp. 3d 1042, 1050 (D. Utah 2021) (holding an attorney for the debtor was an insider).

[3] Like the insider label, this badge may not apply to every alleged transfer. Specifically, it is not clear if the Pre-Loan Transfers uniformly occurred *shortly* before the debt was incurred. For example, the 10782 Home was purchased in October 2020, almost two years before Israelsen and his Entities started incurring debts to East West Bank and others in August 2022. *See* ECF No. 1 ¶ 19. The other money transfers began as early as April 2020, though some did occur in the months leading up to August 2022. *See id.* ¶¶ 42–62. The Post-Loan Transfers, however, did occur shortly after the substantial capital infusions from East West Bank and the others began (the capital infusions occurred in August 2022, December 2023, and March 2024). *See id.* ¶¶ 19, 20, 32.

[4] As demonstrated by the language of the statutes, proving insolvency is required under § 25-6-203 but not § 25-6-202. *See Klein v. Johnson*, No. 2:19-CV-00534-DN-PK, 2023 WL 2540652, at *14 (D. Utah Mar. 16, 2023).

QIR funds to send money to and purchase a home for Beesley. ECF No. 1 ¶¶ 42–62, 66. The Receiver also alleges that the QIR Entities did not receive reasonably equivalent value for these transfers. *Id.* ¶ 69.

Finally, the Receiver plausibly alleges an unjust enrichment claim. To state a prima facie claim for unjust enrichment, a plaintiff must establish "(1) [t]he defendant received a benefit; (2) an appreciation or knowledge by the defendant of the benefit; (3) under circumstances that would make it unjust for the defendant to retain the benefit without paying for it." *S6, LLC v. Wing Enters., Inc.*, 2024 UT App 105, ¶ 34, 556 P.3d 100 (quoting *Emergency Physicians Integrated Care v. Salt Lake County*, 2007 UT 72, ¶ 11, 167 P.3d 1080); *see Johnson v. Blendtec, Inc.*, 500 F. Supp. 3d 1271, 1291–92 (D. Utah 2020).

The Receiver alleges that the home purchases and the money transfers were benefits to Beesley, that Beesley was aware of all of them, and that it would be unjust for her to keep them as the money originated with the QIR Entities. ECF No. 1 ¶¶ 72–74. The Receiver thus sufficiently pleaded each of his claims.

Beesley's final argument—that EWB's and the Receiver's conduct demonstrates bad-faith abuse of process—also fails. She argues that after she declined an off-record meeting and requested that all communications proceed through counsel or proper legal channels, EWB responded with threats and pressure tactics. *See* ECF No. 21 ¶ 25. She believes they "reflect not a legitimate attempt to resolve a claim, but an effort to weaponize litigation as leverage." *Id.* ¶ 27. She also points to the EWB's second suit against her as evidence of improper purpose. Beesley, however, does not raise this apparent abuse of process claim as a counterclaim, and it is not properly included within a motion to dismiss.

**CONCLUSION AND ORDER**

For the reasons above, the court DENIES Beesley's motion to dismiss. ECF No. 21.

Signed August 18, 2026.

BY THE COURT

Jill N. Parrish
United States Chief District Judge